IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
BRUNSWICK DIVISION

WILLIAM MOBLEY,

    Plaintiff,

v.

NOAMI ERICSON; and SCOTT FARRIS,

    Defendants.

CIVIL ACTION NO.: 2:16-cv-78

**ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, who was formerly housed at the Appling County Detention Center in Baxley, Georgia, filed a 42 U.S.C. § 1983 action, contesting certain conditions of his confinement. (Doc. 1.) On February 23, 2017, Defendants filed a Motion for Summary Judgment. (Doc. 19.) The Clerk of Court mailed a Notice to Plaintiff advising him that Defendants filed a Motion for Summary Judgment and that a response must be filed by March 16, 2017. (Doc. 20.) That Notice further advised Plaintiff that:

> 1. If you do not timely respond to this motion . . . , the consequence may be that the Court will deem the motion unopposed, and the Court may enter judgment against you.
>
> 2. If your opponent's Statement of Material Facts sets forth facts supported by evidence, the Court may assume that you admit all such facts unless you oppose those facts with your own Statement of Material Facts which also sets forth facts supported by evidence.
>
> 3. If a summary judgment motion is properly supported, you may not rest on the allegations in your [Complaint] alone.

(Id.)

Plaintiff filed no Response to Defendants' Motion for Summary Judgment, and the Court received no indication this Notice or Defendants' Motion was undeliverable. However, "the district court cannot base the entry of summary judgment on the mere fact that the motion [is] unopposed but, rather, must consider the merits of the motion." United States v. One Piece of Real Property Located at 5800 SW 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004) (citation omitted). Specifically, the court "must still review the movant's citations to the record to determine if there is, indeed, no genuine issue of material fact." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1303 (11th Cir. 2009) (citation omitted).

Based on the reasons which follow, I **RECOMMEND** the Court **GRANT** Defendants' unopposed Motion and **DISMISS** Plaintiff's Complaint **with prejudice**. I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and **DENY** Plaintiff *in forma pauperis* status on appeal.

## BACKGROUND[1]

Plaintiff was a pretrial detainee at the Appling County Detention Center. (Doc. 1, p. 4.) He alleges that Defendants used excessive force against him on May 15, 2016, at approximately 6:00 p.m. Specifically, he states that Defendant Ericson attempted to throw him to the ground without cause and that she hurt his arm in doing so. (Id. at pp. 4, 6.) Plaintiff further contends that Defendant Farris grabbed Plaintiff and slammed him into a wall, injuring Plaintiff's left shoulder. (Id. at pp. 5, 7.)

---

[1] The recited allegations are taken from Plaintiff's Complaint. However, this is not to say the Court accepts the allegations contained in Plaintiff's Complaint as true. Defendants offer their version of events through their Motion and Statement of Material Facts, to which Plaintiff failed to offer a response. Defendants' undisputed material facts are set forth in Section II of this Report.

2

**DISCUSSION**

Defendants maintain they are entitled to summary judgment because Plaintiff fails to set forth a viable excessive force claim under the Fourteenth Amendment. Defendants also contend they are entitled to qualified immunity. Additionally, Defendants assert Plaintiff did not exhaust his administrative remedies prior to filing his Complaint.[2] In moving for summary judgment, Defendants rely on their Statement of Material Facts, a copy of the transcript from Plaintiff's deposition, several declarations sworn under penalty of perjury, and a DVD depicting the May 15, 2016, incident.

As set forth below, the undersigned agrees that Plaintiff fails to establish a genuine dispute as to his excessive force claims. Therefore, the Court should **GRANT** Defendants' Motion.

**I.    Standard of Review**

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. However, there must exist a conflict in substantial evidence to pose a jury question." Hall v. Sunjoy Indus. Grp., Inc., 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986), and (Verbraeken v. Westinghouse Elec. Corp., 881 F.2d 1041, 1045 (11th Cir. 1989)).

---

[2] In support of this argument, Defendants submit a copy of the administrative remedy procedures at the Appling County Detention Center, (doc. 19-7), and a copy of the transcript from Plaintiff's deposition, (doc. 19-9). However, Defendants did not submit a copy of Plaintiff's grievance or a printout of his grievance history.

The moving party bears the burden of establishing that there is no genuine dispute as to any material fact and that he is entitled to judgment as a matter of law. See Williamson Oil Co., Inc. v. Philip Morris USA, 346 F.3d 1287, 1298 (11th Cir. 2003). Specifically, the moving party must identify the portions of the record which establish that there are no "genuine dispute[s] as to any material fact and the movant is entitled to judgment as a matter of law." Moton v. Cowart, 631 F.3d 1337, 1341 (11th Cir. 2011). When the nonmoving party would have the burden of proof at trial, the moving party may discharge his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial. See id. (citing Celotex v. Catrett, 477 U.S. 317, 322–23 (1986)). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in a light most favorable to the nonmoving party. Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee Cty., 630 F.3d 1346, 1353 (11th Cir. 2011).

## II.    Plaintiff's Use of Force Claims

Because Plaintiff was a pretrial detainee at the time of the alleged use of force incidents, Defendants' Motion requires analysis of the Fourteenth Amendment's due process clause. In Kingsley v. Hendrickson, the United States Supreme Court determined that a pretrial detainee alleging a violation of his constitutional rights must show, under the Fourteenth Amendment's due process clause, that an officer's actions in an excessive use of force claim were objectively unreasonable. ___ U.S. at ___, 135 S. Ct. 2466, 2472–73 (June 22, 2015). In other words, a pretrial detainee need not prove what a defendant's state of mind was at the time of the alleged constitutional violation, i.e., the subjective component in a typical Eighth Amendment excessive use of force claim alleged by a convicted prisoner. Id. The Court cautioned "[a] court (judge or

4

jury) cannot apply this standard mechanically." Id. at ___, 135 S. Ct. at 2473 (citing Cty. of Sacramento v. Lewis, 523 U.S. 833, 850 (1998)). "Rather, objective reasonableness turns on the 'facts and circumstances of each particular case.'" Id. (quoting Graham v. Connor, 490 U.S. 386, 396 (1989)). "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citation omitted). "A court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" Id. (quoting Bell v. Wolfish, 441 U.S. 520, 540 (1979) (alterations in original).

When considering the reasonableness of the force used, courts should look to, *inter alia*: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." Id. (citing Graham, 490 U.S. at 396). The Supreme Court noted this list is meant to "illustrate the types of objective circumstances potentially relevant to a determination of excessive force[ ]" but is not meant to be an exhaustive list. "The calculus of reasonableness must embody allowance for the fact that . . . officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." Crowley v. Scott, No. 5:14-CV-326 (MTT), 2016 WL 2993174, at \*5 (M.D. Ga. May 23, 2016) (citing Graham, 490 U.S. at 396–97).

Defendants' unrefuted Statement of Material Facts and supporting materials establishes the following facts pertinent to whether Plaintiff was subjected to an excessive use of force under the Fourteenth Amendment. Defendant Ericson entered Dorm 1 of the Appling County Detention Center on the evening of May 15, 2016, to change the television station. (Doc. 19-1, p. 1; Doc. 19-6, p. 2.) She noticed a sheet lying across one of the tables and instructed the inmates sitting at that table to remove the sheet from the table. Defendant Ericson noticed Plaintiff was holding an unauthorized pen once the inmates began removing the sheet. Defendant Ericson asked Plaintiff to give her the pen, and he responded that he was not going to give her the pen. (Doc. 19-1, p. 2; Doc. 19-6, p. 3.) Defendant Ericson once again asked Plaintiff for the pen, and Plaintiff would not give it to her. Plaintiff had already gotten up from the table and began moving away from Defendant Ericson. Defendant Ericson told Plaintiff he was going to segregation until Lieutenant Bell could review the incident, yet Plaintiff still refused to go with Defendant Ericson. Defendant Ericson grabbed Plaintiff's jumpsuit to lead him out of the dorm. Plaintiff "snatched away" from Defendant Ericson, so she grabbed his right arm and jumpsuit in an effort to pull him toward the exit. (Doc. 19-1, p. 3; Doc. 19-6, p. 3.) Plaintiff physically and verbally resisted Defendant Ericson's efforts to remove him from the dorm and her instructions for him to leave the dorm. Three other jailers came to the dorm to assist Defendant Ericson, at which time Defendant Farris "placed" Plaintiff against the wall. (Doc. 19-1, p. 3.)

During his deposition, Plaintiff testified that he had a contraband pen which he refused to turn over to Defendant Ericson despite her requests to do so. (Doc. 19-9, p. 15.) Plaintiff testified that the pen was not his, and he was going to give it back to the person to whom the pen belonged. Plaintiff stated he informed Defendant Ericson he would leave on his own accord and

6

that she did not have to put her hands on him. (Id. at p. 16.) Plaintiff declared he did not have any injury from his altercation with Defendant Ericson, but he was injured when Defendant Farris grabbed him and pushed him against the wall. (Id. at p. 19.)

Defendants also submitted a DVD from two cameras' vantage points, which depicts this incident and which was kept in the regular course of business at the Appling County Detention Center. (Doc. 19-5; Doc. 19-8, p. 2.) The DVD shows Defendant Ericson entering a dorm with more than ten (10) inmates or detainees. (Doc. 19-5, 18:17:07.) Plaintiff was sitting with at least two other inmates at a table covered in a sheet, and it appeared that these inmates were playing cards. Plaintiff turned toward Defendant Ericson and tried to hide something under the sheet. (Id. at 18:17:12.) Defendant Ericson was talking to Plaintiff as she approached him. Defendant Ericson was then dragging Plaintiff away from the table by his arm and jumpsuit, during which time Plaintiff was attempting to plant his feet and walk back toward the tables in the dorm. (Id. at 18:17:40–18:17:48.) Three other jailers arrived at the dorm and were able to help Defendant Ericson remove Plaintiff from the dorm. Defendant Farris then placed Plaintiff against the wall in the hallway outside of the dorm. (Id. at 18:17:59.) The footage then ended.

This Court, using the non-exhaustive list of objective circumstances courts should look to in determining whether a use of force was excessive under the Fourteenth Amendment, finds as follows.

### A. The Relationship Between the Need for the use of Force and Amount of Force Used

Even when viewing the evidence in the light most favorable to Plaintiff, Defendants did not objectively use more force than was required by Plaintiff's actions. Plaintiff refused a direct order to give Defendant Ericson the pen he was holding. In fact, Plaintiff admitted to failing to comply with this directive during his deposition. Prison officials undoubtedly have a desire and

legitimate purpose to have those in their charge to comply with simple directives. Lester v. Ga. Dep't of Corr., No. 6:15-cv-110, 2016 WL 146514, at *4 (S.D. Ga. Jan. 12, 2016) (citing Brown v. Smith, 813 F.2d 1187, 1189–90 (11th Cir. 1987), which upheld a judgment in favor of an officer who used force against an inmate to accomplish the legitimate security purpose of getting the inmate into his cell), *adopted by* 2016 WL 524616 (Feb. 5, 2016). Once the other three jailers arrived on the scene, Defendant Farris placed Plaintiff against the wall without the use of excessive force. Contra Hutcheson v. Binion, No. 4:09CV056-M-S, 2011 WL 2669078, *3 (N.D. Miss. May 3, 2011) (finding that the first time an officer slammed a prisoner's arm may have been inadvertent in an attempt to maintain order, but it became "obvious" that the officer's repeated slamming of the inmate's arm in the flap crossed into the "unreasonable or even malicious territory."). Therefore, the force applied by Defendants was commensurate to the threat to discipline and order posed by Plaintiff's actions and refusal to follow orders.

### B. The Extent of Plaintiff's Injuries

The extent of injury is a relevant consideration "in determining whether the use of force could plausibly have been thought necessary under the circumstances and may be an indication of the amount of force applied." Logan v. Smith, 439 F. App'x 798, 800 (11th Cir. 2011) (citing Wilkins v. Gaddy, 559 U.S. 34, 37 (2010)). However, while the resulting injury can be indicative, the key inquiry is the amount of force applied by Defendant, not the severity of the injury that resulted to Plaintiff. Id. at 800–01 (citing Wilkins, 559 U.S. at 37). Injury and force are "imperfectly correlated," and "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins, 559 U.S. at 38.

While Plaintiff contends he received injuries to his shoulder as a result of Defendant Farris' actions, the medical evidence of record reveals that x-rays of Plaintiff's shoulder were "[u]nremarkable[.]" (Doc. 19-3.) Specifically, "[m]ultiple views" of his shoulder "demonstrate no fracture, dislocation, or subluxation. The glenohumeral joint and the acromioclavicular joint articulate normally. All cortical margins are intact, and the soft tissue planes are normal." (Id.) The Court notes that Plaintiff's lack of injury is not the dispositive inquiry here. However, the lack of injury indicates that Defendants only applied a minimal amount of force which, as noted above, was necessary to have Plaintiff comply with Defendants' directives.

### C. Efforts Made to Temper or Limit the Amount of Force

Given Plaintiff's injuries resulting from Defendants' use of force, little effort was needed to mitigate the effects of the force. Given the low severity of Plaintiff's injury, the evidence reveals no impropriety and, therefore, cuts in Defendants' favor. Alday, 2014 WL 1320093, at *7. Plaintiff filled out a medical form after he received his injuries. Plaintiff states in his Complaint that he was seen by medical at the Appling County Detention Center shortly after this incident. (Doc. 1, p. 8.) Additionally, as noted above, Plaintiff had x-rays taken of his shoulder, which revealed no injury to his shoulder as a result of this use of force incident. Defendants also made an effort to limit any amount of force used, as the entire incident occurred over the course of one minute's time. (Doc. 19-5.) Thus, this factor also weighs in Defendants' favor.

### D. Severity of Security Problem

Here, it undisputed Plaintiff was failing to comply with a direct order to give Defendant Ericson the pen he was holding, and he was resisting Defendant Ericson's efforts to remove him from the dorm. Additionally, Plaintiff was in the dorm with at least nine (9) other inmates or

detainees, none of whom appeared to have been handcuffed. Defendant Ericson was the only officer on the scene for a moment.

The Supreme Court has "recognize[d] that [r]unning a prison is an inordinately difficult undertaking," Kingsley, ___ U.S. at ___, 135 S. Ct. at 2474 (quoting Turner v. Safley, 482 U.S. 78, 84–85 (1987)), "and that 'safety and order at these institutions requires the expertise of correctional officials, who must have substantial discretion to devise reasonable solutions to the problems they face[.]'" Id. (quoting Florence v. Bd. of Chosen Freeholders of Cty. of Burlington, 566 U.S. 318, 326 (2012)). "Officers facing disturbances 'are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving.'" Id. (quoting Graham, 490 U.S. at 397).

Defendant Ericson's actions in trying to remove Plaintiff from the dorm and to remove the contraband from his hand and the other Defendants' efforts to restrain him were reasonable under the circumstances.

### E. Threat Reasonably Perceived by Defendants

Based on the Court's review of the DVD, Plaintiff is significantly larger than Defendant Ericson, both in height and weight. Moreover, Plaintiff was holding an object in his hand that could have been used as a weapon against Defendant Ericson, other staff members, or his fellow prisoners. Defendant Ericson's actions in trying to remove Plaintiff from the dorm and to remove the contraband from his hand, as well as the efforts to restrain Plaintiff, were reasonable under the circumstances.

### F. Whether Plaintiff was Actively Resisting

The uncontroverted evidence reveals that Plaintiff was in fact resisting Defendant Ericson's efforts to remove him from the dorm and disobeyed her direct orders. As noted above,

Plaintiff admitted during his deposition he had not planned on giving Defendant Ericson the pen. While Plaintiff testified that he told Defendant Ericson he would leave the dorm on his own volition, the DVD shows that Defendant Ericson was forced to drag Plaintiff away from the dorm, and Plaintiff was physically resisting those efforts. The Court credits Defendants' version of events. In fact, Plaintiff's unsworn account of this incident is wholly contradicted by the evidence before the Court, particularly the DVD of this incident, and the Court need not accept Plaintiff's account. Joassin v. Murphy, 661 F. App'x 558, 559 (11th Cir. 2016) (recognizing that, under Scott v. Harris, 550 U.S. 372, 380 (2007), courts "should disregard a party's sworn account of the events if it is 'blatantly contradicted by the record, so that no reasonable jury could believe it.'").

The totality of the objective circumstances this Court is to examine to determine whether Defendants used an excessive amount of force against Plaintiff weighs heavily in Defendants' favor. Plaintiff has failed to establish a genuine dispute of material fact which reveals that Defendants acted in an objectively unreasonable manner. Consequently, Defendants are entitled to summary judgment in their favor. The Court should **GRANT** this portion of Defendant's Motion and **DISMISS** Plaintiff's Complaint.

It is unnecessary to address Defendants' qualified immunity claims, and the Court should **DISMISS as moot** this portion of Defendants' Motion. Flowers v. Lane, No. 2:14-CV-138, 2016 WL 1627679, at *6 (S.D. Ga. Apr. 22, 2016) (citing Martinez v. Burns, 459 F. App'x 849, 851 (11th Cir. 2012) (a qualified immunity defense need not be addressed if the plaintiff cannot sustain an underlying constitutional claim), *report and recommendation adopted*, No. 2:14-CV-138, 2016 WL 2889042 (S.D. Ga. May 17, 2016).

### III. Leave to Appeal *in Forma Pauperis*

The Court should also deny Plaintiff leave to appeal *in forma pauperis*. Though Plaintiff has, of course, not yet filed a notice of appeal, it is proper to address these issues in the Court's order of dismissal. See Fed. R. App. P. 24(a)(3) (trial court may certify that appeal of party proceeding *in forma pauperis* is not taken in good faith "before or after the notice of appeal is filed").

An appeal cannot be taken *in forma pauperis* if the trial court certifies that the appeal is not taken in good faith. 28 U.S.C. § 1915(a)(3); Fed. R. App. P. 24(a)(3). Good faith in this context must be judged by an objective standard. Busch v. Cty. of Volusia, 189 F.R.D. 687, 691 (M.D. Fla. 1999). A party does not proceed in good faith when he seeks to advance a frivolous claim or argument. See Coppedge v. United States, 369 U.S. 438, 445 (1962). A claim or argument is frivolous when it appears the factual allegations are clearly baseless or the legal theories are indisputably meritless. Neitzke v. Williams, 490 U.S. 319, 327 (1989); Carroll v. Gross, 984 F.2d 392, 393 (11th Cir. 1993). Or, stated another way, an *in forma pauperis* action is frivolous and, thus, not brought in good faith, if it is "without arguable merit either in law or fact." Napier v. Preslicka, 314 F.3d 528, 531 (11th Cir. 2002); see also Brown v. United States, Nos. 407CV085, 403CR001, 2009 WL 307872, at *1–2 (S.D. Ga. Feb. 9, 2009).

Based on the above analysis of Plaintiff's action and Defendants' unopposed Motion for Summary Judgment, there are no non-frivolous issues to raise on appeal, and an appeal would not be taken in good faith. Thus, the Court should **DENY** Plaintiff *in forma pauperis* status on appeal.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** the Court **GRANT** Defendants' unopposed Motion for Summary Judgment and **DISMISS** Plaintiff's Complaint **with prejudice**. I further **RECOMMEND** the Court **DIRECT** the Clerk of Court to **CLOSE** this case and **DENY** Plaintiff *in forma pauperis* status on appeal.

The Court **ORDERS** any party seeking to object to this Report and Recommendation to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the Complaint must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action. The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence.

Upon receipt of Objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge.

The Court **DIRECTS** the Clerk of Court to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED and RECOMMENDED**, this 4th day of May, 2017.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA